[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this dissolution of marriage action married on September 3, 1983 in Hartford, Connecticut. The Plaintiff has resided within the State of Connecticut since 1991. There are two children issue of this marriage: Matthew Charles Woodard, born January 16, 1986 and Daniel Robert Woodard born September 28, 1987.
The parties have been separated since 1991, and the marriage has broken down irretrievably.
The matter was tried to the court on January 25, 1996; with the outstanding issues relating to financial orders.
The Plaintiff is 41 years of age, the Defendant is years of age.
The Plaintiff has a degree from Quinnipiac College with a major in medical technology. She has employment experience in management in medical technology and computer programming. She is currently employed 30 hours a week in an administrative secretarial position, earning approximately $18,000 annually. The Plaintiff has devoted a great deal of her time to parenting the parties' children.
The Defendant is a physician and neurosurgical specialist. He has been trained at the most prestigious neurosurgical programs and now enjoys a faculty position at the Harvard Medical School. In his current "academic CT Page 1323-ZZZZ medicine" position he earns $270,000 annually with generous employment benefits. In the private practice of medicine he has earned $360,000 annually; and could earn in excess of $500,000 annually.
The parties stipulated at trial that joint custody of the children should be awarded with primary residence with the plaintiff and reasonable rights of visitation to the defendant. The parties are unusually mature and responsible concerning their children. As a result of their mutual support and refusal to entangle their children in their marital discord; the children are thriving in spite of the marital failure. The parties and especially the plaintiff are commended for their efforts to shield their children from the stress of the marital conflict. It appears that the children respect and love both parents.
The marriage is ordered dissolved on the grounds of irretrievable breakdown and joint custody of the minor children is awarded. The children's primary residence will be with their mother, with reasonable rights of visitation to the father.
The children's health insurance will be the responsibility of the Defendant, as well as unreimbursed health care expenses.
The Plaintiff will continue her insurance under the Defendant's health insurance plan pursuant to COBRA, with the Plaintiff obligated to pay the expense.
The Defendant will maintain life insurance for the benefit of the Plaintiff and the children, in a face amount of no less than the gross remaining alimony and support payments set forth in this judgment.
The personal property of the parties is to be equitably distributed with each party to retain pre-marital property and property gifted by their family. The Court retains jurisdiction for the purpose of resolving any disputes related to this provision, as stipulated by the parties.
In making the financial orders which are the subject of substantial disputes it is necessary to review the history of the parties relationship and marriage. CT Page 1323-AAAAA
In 1976 the Plaintiff graduated from college and commenced employment at Hartford Hospital as a medical technologist. She remained at Hartford Hospital until 1983. During her tenure at the hospital Plaintiff's responsibilities increased substantially and her compensation rose from $10,000 to $32,000.
The Defendant while a student at Trinity College took a job at the Hartford Hospital medical laboratory in 1978. The parties met at work and commenced dating, which soon became an exclusive relationship.
In 1981 the Defendant graduated from Trinity with the highest honors and entered Pennsylvania State Medical School. The parties continued to date and visit on weekends and holidays.
The parties married in 1983 and the Plaintiff left her job to live with her husband in Pennsylvania.
The Defendant took out educational loans for his educational and living expenses. The Plaintiff worked at two minimum wage jobs to help with the expenses of their marital home. The Plaintiff became employed in computer programming in 1984, earning $15,000 annually.
In 1985 the Defendant graduated from medical school as one of the top students and commenced a six-year neurosurgical residency program at Emory University Medical Center in Atlanta, Georgia.
The family relocated to Atlanta and the Plaintiff found a programming consulting position paying $23,000 annually.
The children were born in 1986 and 1987 while the Defendant continued his demanding residency program. The Plaintiff took six months leave from work after the birth of their first child and three months after the birth of her second child.
The Defendant in his neurosurgical residence frequently spent over 100 hours a week at the Hospital. The Defendant was at the Hospital nearly all day on almost every day. The Plaintiff, in addition to her employment contributions, CT Page 1323-BBBBB assumed the child care and child rearing obligations.
The parties resided in a home in the Atlanta area.
The stress of their circumstances resulted in a confrontation in December of 1988, in which the Defendant indicated he was no longer in love with the Plaintiff.
The Plaintiff requested counseling and the Defendant agreed. The counseling continued on a weekly basis for about a year.
The Defendant moved out of the family home in January of 1990, but returned at Plaintiff's request in June of 1990. The Defendant was involved in a relationship with another woman, but agreed to abandon it and pursue a marital reconciliation.
The Plaintiff continued working as a programmer consultant until September of 1990. She quit employment because of stress related to commuting, child care demands, work demands and sexual harassment at work. The Defendant moved out of the marital home in January of 1991. The Plaintiff left the Atlanta area to visit her parents in Farmington, Connecticut in March of 1991.
The Defendant continued his education with six months of training in Milwaukee, Wisconsin in 1991. He accepted a teaching appointment at the Emory Medical Center in January of 1992, which he retained until March of 1994.
In March of 1994 the Defendant took a private practice position in South Dakota which paid him $30,000 a month. Dr. Woodard left this position in June of 1995; and shortly thereafter assumed his current position with the Brigham Surgical Group and Harvard Medical School.
The Plaintiff continued to hope for and seek reconciliation even after filing this action in August of 1994. The Defendant expressed ambivalence to the Plaintiff and remained focused on his career. He did not advise the Plaintiff that he lived with another woman in Atlanta and South Dakota.
The Plaintiff and the children have remained since March CT Page 1323-CCCCC of 1991 in her parents home; which they share with her retired parents.
The Plaintiff resumed employment in February of 1995, when she finally abandoned any hope of reconciliation.
The Defendant currently pays $4,500 per month voluntarily to the Plaintiff. In addition, he picks up expenses of approximately $1,300 a month. He is thus currently paying nearly $70,000 a year after tax payments.
Defendant proposes to pay child support of $26,780 per year, and $24,000 per year alimony for four years. Defendant does not propose paying lump sum alimony.
Defendant's proposals would be grossly unfair. It would leave the Plaintiff and her children with a gross income of approximately $68,000 a year, while he was left with over $200,000 a year for himself. The total alimony award of $96,000 would leave the Plaintiff and children in a substantially reduced station with a questionable ability to acquire a home of their own. That the children of a highly successful and well-compensated neurosurgeon would have to board with their grandparents seems highly unusual.
The Plaintiff relocated to support, emotionally and financially, the Defendant's educational and career pursuits.
The Plaintiff's homemaking and primary caretaking responsibilities are to be considered, O'Neill v. O'Neill,13 Conn. App. 300, 311, cert. denied, 207 Conn. 806 (1988).
The Plaintiff requests a lump sum alimony award to compensate for the $7,500 in savings she brought to the marriage, and $175,000 in earnings she contributed from 1983 to 1990. She requests lump sum alimony of $60,000 ($30,000 within 30 days and $30,000 within 6 months), in order to purchase a car and home.
The Plaintiff alternatively requests $7,500 per month of after-tax alimony and child support until the youngest child graduates from high school; or, $48,000 child support ($24,000 per child) and $5,000 per month alimony through June of 2005.
The Court feels the current circumstances of the CT Page 1323-DDDDD Plaintiff and her children and the resources of the Defendant require an award of lump sum alimony. The Plaintiff's request is reasonable and will be essentially granted. The total lump sum alimony will be $60,000, payable $30,000 within 60 days and the remaining $30,000 within six months of the date of this judgment.
The parties' income exceeds the Child Support Guidelines upper limits and are thus to be calculated "on a case-by-case basis" C.G.S. Sec. 46b-215(a)(2). The Court feels that the lack of assets now available requires a support order somewhat in excess of guideline extrapolation. The Court orders support in the total annual amount of $35,000; $17,500 per child. The order is to be paid weekly or in accordance with the Defendant's pay schedule.
The Plaintiff must also be awarded periodic alimony in order to recognize the frustration of her reasonable expectations as to the financial rewards for her contributions and sacrifices to advance the Defendant's distinguished career. The parties agreed that after the Defendant was finally established, she would pursue graduate studies, and share the affluent life style the Defendant now enjoys. For unforeseen reasons, this marriage has failed, but the Plaintiff must be afforded a fair opportunity to pursue her career opportunities and enjoy a comfortable lifestyle with her sons. The Plaintiff is awarded periodic alimony of $800 per week until June 30, 2004; when the oldest child, Matthew, should have graduated from high school. This award of alimony shall otherwise end upon the remarriage of the Plaintiff, death of the Plaintiff or death of the Defendant.
The award of periodic alimony and support totals $76,600 less than 50% of Defendant's current net income. The award does not in any way interfere with his commendable desire to pursue academic medicine; nor does it consider the very substantial retirement assets he is currently accruing. The net, after tax consequence of the award, will leave the Defendant with net annual income of in excess of $100,000 to devote to his own expense. The $60,000 in lump sum alimony will not substantially alter this scenario.
McWeeny, J. CT Page 1323-EEEEE